**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED AND FILED

OCT 22 2026

JENNIFER P. LYONS, CLERK

BY______________________
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

COMMUNITY HOME HEALTH CARE LLC

NOORA ABD, A/K/A "UM MOHAMMED"

FAYSAL KALAYAF MANAHE, A/K/A "ABU AZIZ"

ADEL AL RASHID, A/K/A "ABU AYMAN"

SURA ALMOHAMMED, A/K/A, "UM AYMAN"

ETHAR ALYASEEN, and

MOHAMMED ALKHALAF, A/K/A "ABU STAYF"

No. 1:26-cr-00114-JAW

**INDICTMENT**

The Grand Jury charges that:

**General Allegations**

At all times relevant to this Indictment:

1. Medicaid was a health care benefit program jointly funded with federal and state funds. It was administered by the U.S. Department of Health and Human Services ("HHS") and by state agencies. Maine's Medicaid program was known as MaineCare and was administered by the Maine Department of Health and Human Services ("MDHHS"). MaineCare was a health care benefit program as that term is defined in Title 18, United States Code, Section 24(b) as well as a "Federal health care

program," as defined by Title 42, United States Code, Section 1320a-7b(f). Persons covered under MaineCare were commonly referred to as "members," or "beneficiaries."

2. Activities of daily living were defined as basic activities of self-care performed by individuals on a daily or frequent basis necessary for independent living and could include activities such as: bed mobility, transfer, locomotion, eating, toilet use, bathing, and dressing.

3. Instrumental activities of daily living were defined as tasks necessary for maintaining a member's immediate environment, such as preparing and serving meals, washing dishes, dusting, making bed, picking up living space, sweeping, vacuuming and washing floors, cleaning toilet, tub and sink, appliance care, changing linens, removing refuse, shopping for groceries and prepared foods, storing purchased groceries, and laundry, either within the residence or at an outside laundry facility.

4. Personal care services (also known as personal support services), included personal care services delivered by an agency related to a member's physical requirements for assistance with activities of daily living, and in certain cases, for aiding in instrumental activities of daily living. Personal care services were not authorized for the sole purposes of aiding with instrumental activities of daily living. Respite services included assistance provided to a member who was unable to care for themselves and who required care on a short-term basis due to the absence of, or to provide relief for, the caregiver who normally provided care to the member.

5. A personal care agency was a business entity or subsidiary of a business entity licensed by MDHHS that hired and employed direct access personnel to work in direct contact with clients to provide assistance with activities of daily living and

instrumental activities of daily living in the places in which they resided, either permanently or temporarily.

6. Personal support specialists were individuals who were employed by personal care agencies to provide personal care services, subject to certain training, licensing, and supervision requirements.

7. MDHHS required use of Electronic Visit Verification ("EVV") in connection with the delivery of personal care services. EVV was an internet-based system that was intended to electronically verify the delivery dates and times of home and community-based services to the recipients of those services. The EVV system captured the following data:

a. Type of service performed;
b. Individual receiving the service;
c. Date of service;
d. Location of service delivery;
e. Individual providing the service; and
f. Time the service begins and ends.

8. EVV operated over telephone lines, cellular telephone networks, and the internet, when personal support specialists called a designated phone number from the service location, or recorded service hours via computer or mobile device application. Corrections or edits, or manual adjustments to EVV entries could be made through a web-based portal by a personal care agency. A personal support specialist was responsible for checking in and checking out for each shift using EVV. However, a personal care agency could also utilize the manual editing process to add visits through the web-based portal.

9. A personal care agency's EVV data was electronically transmitted to computer servers operated or controlled by a third-party vendor (the "Vendor") for MDHHS. This data was then compared to claims submitted by personal care agencies. Per MaineCare policy, claims were required to be supported by a corresponding EVV record showing that the claimed personal care services had been rendered. MaineCare policy did not permit payment to personal care agencies for personal care service claims until a corresponding EVV record was identified in the agencies EVV data.

10. Defendant COMMUNITY HOME HEALTH CARE, LLC ("COMMUNITY") was a licensed personal care agency headquartered in South Portland, Maine. Defendant NOORA ABD owned and operated COMMUNITY. Defendants FAYSAL KALAYAF MANAHE, ADEL AL RASHID, SURA ALMOHAMMED, MOHAMMED ALKHALAF, and ETHAR ALYASEEN were employed by COMMUNITY as personal support specialists and in other capacities.

11. COMMUNITY used the Vendor, known to the grand jury, to collect and process EVV data for services purportedly provided to members by personal support specialists employed by COMMUNITY. The Vendor assigned each personal support specialist employed by COMMUNITY a unique username to access the EVV system to check in and out of shifts during which they provided personal care services to members.

12. Various MaineCare members, including Client 1, were authorized by MDHHS or its designees to receive personal care services. These MaineCare members, including Client 1, purportedly received personal care services from COMMUNITY.

13. COMMUNITY, through NOORA ABD, billed and was paid by MaineCare for personal care services purportedly rendered to Client 1 knowing that those services had not been rendered.

**COUNT 1**

**(Healthcare Fraud Conspiracy)**

14. Paragraphs 1 through 13 are realleged here with respect to Count 1.

15. Beginning on a date unknown and continuing through August 2026, in the District of Maine, defendants COMMUNITY, NOORA ABD, a/k/a UM MOHAMMED, FAYSAL KALAYAF MANAHE, a/k/a ABU AZIZ, ADEL AL RASHID, a/k/a ABU AYMAN, SURA ALMOHAMMED, a/k/a UM AYMAN, MOHAMMED ALKHALAF, a/k/a ABU STAYF, and ETHAR ALYASEEN conspired and agreed, together and with others known and unknown to the grand jury, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program, specifically MaineCare, and to obtain money and property owned by MaineCare and under its custody and control, by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services.

**OBJECT AND PURPOSE OF THE CONSPIRACY**

16. The object of the conspiracy was a scheme to commit health care fraud through a scheme to defraud MaineCare. The principal purpose of the conspiracy and the scheme to defraud was to obtain payment from MaineCare for personal care services that had not been rendered to clients of COMMUNITY, including Client 1.

## MANNER AND MEANS OF THE CONSPIRACY AND SCHEME TO DEFRAUD

It was part of the conspiracy that:

17. NOORA ABD owned, controlled, and operated COMMUNITY.

18. ADEL AL RASHID, SURA ALMOHAMMED, MOHAMMED ALKHALAF, ETHAR ALYASEEN, and Person 1 were employed by COMMUNITY, purportedly as personal support specialists.

19. MOHAMMED ALKHALAF completed EVV entries purporting to show that Defendant MOHAMMED ALKHALAF provided personal care services to Client 1.

20. MOHAMMED ALKALAF utilized EVV login credentials, including usernames and passwords, of ADEL AL RASHID, SURA ALMOHAMMED, ETHAR ALYASEEN, and Person 1 to enter false EVV entries. These EVV entries purported to show that ADEL AL RASHID, SURA ALMOHAMMED, ETHAR ALYASEEN, and Person 1 provided personal care services to Client 1 in the District of Maine, when in fact those services had not been provided.

21. NOORA ABD, FAYSAL KALAYAF MANAHE, ADEL AL RASHID, SURA ALMOHAMMED, MOHAMMED ALKHALAF, and ETHAR ALYASEEN shared and transferred EVV login credentials amongst one another for the purpose of creating false EVV entries. False EVV entries were used to support claims made by COMMUNITY and NOORA ABD to MaineCare, for services purportedly provided to Client 1. As a result of claims submitted by COMMUNITY, MaineCare paid COMMUNITY for personal care services that had not been rendered to Client 1.

22. Since 2020, COMMUNITY and NOORA ABD submitted numerous claims to MaineCare for personal care services and respite care services purportedly rendered

to Client 1. MaineCare paid COMMUNITY more than $600,000 for personal care services purportedly rendered by COMMUNITY to Client 1. MaineCare later reversed approximately $35,000 of the payments to COMMUNITY with respect Client 1.

23. ADEL AL RASHID, SURA ALMOHAMMED, MOHAMMED ALKHALAF, ETHAR ALYASEEN, and Person 1 received payments from COMMUNITY and NOORA ABD for personal care services they purportedly rendered to Client 1 but had not actually provided.

24. On about June 23, 2026, Defendants NOORA ABD and FAYSAL KALAYAF MANAHE learned that the Federal Bureau of Investigation ("FBI") and other law enforcement agencies were investigating health care fraud related to COMMUNITY, its employees, and its clients. After learning of the investigation, NOORA ABD and FAYSAL MANAHE engaged in a series of communications with Person 2, who was aware of material facts concerning the scheme to defraud MaineCare involving COMMUNITY, including information establishing that purported personal care services claimed by COMMUNITY had not been rendered. During these communications, NOORA ABD and FAYSAL MANAHE encouraged Person 2 not to speak with law enforcement and instructed Person 2 to mislead investigators by providing false information.

In violation of Title 18, United States Code, Sections 1349 and 1347.

## COUNT 2

## (False Statements)

25. Paragraphs 1 through 23 are realleged here with respect to Count 2.

26. On June 23, 2026, in the District of Maine, MOHAMMED ALKHALAF, a/k/a ABU STAYF, willfully and knowingly made a materially false, fictitious, and

fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating to an agent of the FBI, at MOHAMMED ALKHALAF's residence in Augusta, Maine, that MOHAMMED ALKHALAF had not used an EVV application to log hours for persons other than himself and that he was not aware of other persons' EVV login information.

27. The statements and representations were false because, as MOHAMMED ALKHALAF then and there knew, MOHAMMED ALKHALAF had received EVV login credentials, including usernames and passwords, of ADEL ALRASHID, SURA ALMOHAMMED, ETHAR ALYASEEN, and Person 1, and had used their EVV login credentials to log false hours in the EVV system which purported to show ADEL ALRASHID, SURA AL MOHAMMED, ETHAR ALYASEEN, and Person 1 had provided Client 1 with personal care services.

28. In violation of Title 18, United States Code, Section 1001.

**COUNT 3**

**(Obstructing a Health Care Crime Investigation)**

29. Paragraphs 1 through 24 are realleged here with respect to Count 3.

30. Beginning on about June 23, 2026, and continuing through August 2026, in the District of Maine, defendants, NOORA ABD, a/k/a UM MOHAMMED, and FAYSAL KALAYAF MANAHE, a/k/a ABU AZIZ, willfully prevented, obstructed, misled, and delayed the communication of information and records to a criminal investigator, attempted to do so, and aided and abetted such conduct. These records related to violations of Federal health care offenses.

In violation of Title 18, United States Code, Sections 1518 and 2.

**FIRST FORFEITURE NOTICE**

31. Upon conviction of the offense in violation of Title 18, United States Code, Sections 1349 and 1347, set forth in Count 1 of this Indictment, the DEFENDANTS COMMUNITY, NOORA ABD, a/k/a UM MOHAMMED, FAYSAL KALAYAF MANAHE, a/k/a ABU AZIZ, ADEL AL RASHID, a/k/a ABU AYMAN, SURA ALMOHAMMED, a/k/a UM AYMAN, MOHAMMED ALKHALAF, a/k/a ABU STAYF, and ETHAR ALYASEEN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense and, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. The property to be forfeited includes, but is not limited to:

a. a money judgment in the amount of all such proceeds;

b. $116,854 in U.S. currency seized from an address in Biddeford, Maine on about June 23, 2026, and assigned Asset ID No. 26-FBI-004409 (including $110,400 seized from a safe in the bedroom and $6,454 seized from a purse next to the safe);

c. Miscellaneous items of jewelry seized from a safe from an address in Biddeford, Maine on about June 23, 2026, and assigned Asset ID No. 26-FBI-004410; and

d. $53,768.85 in U.S. currency seized from an address in Augusta, Maine on about June 23, 2026, and assigned Asset ID No. 26-FBI-004411

(including $1,439 seized from a purse and other currency seized from various locations).

32. If any of the property described in above as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(a)(7), as a result of any act or omission of the defendant—

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described above.

All pursuant to Title 18, United States Code, Section 981(a)(1) and Title 28, United States Code, Section 2461 and Title 18, United States Code, Section 982(a)(7).

Signature Redacted – Original on file with the Clerk's Office

FOREPERSON

Assistant United States Attorney
Date: October ~~21~~ 22, 2026 (NS)